**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**
**CASE NO.:** 8:26-cv-01552-JLB-SPF

**KELLY DEVORE,**
**an Individual**

**Plaintiff,**

**v.**

**BERN'S STEAK HOUSE, INC.,**
**A Florida Profit Corporation,**

**Defendant.**
_______________________________________/

## AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, **KELLY DEVORE**, ("Plaintiff") files this Amended Complaint against Defendant, **BERN'S STEAK HOUSE, INC.** ("Defendant"), and states as follows:

## INTRODUCTION

1. Plaintiff brings this action pursuant the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq*. ("ADA"), and Chapter 760 of the Florida Civil Rights Act ("FCRA"), and for violation of Florida's Workers' Compensation Retaliation statute ("WCRS") at Section 440.205, Florida Statutes to recover from Defendant back pay, other monetary damages, equitable relief, front pay, declaratory relief, compensatory damages, punitive damages, and reasonable attorneys' fees and costs.

## JURISDICTION AND VENUE

2. Plaintiff is an adult individual.

3. Defendant is a Florida Profit Corporation that is located and does business in Hillsborough County, Florida, and is therefore within the jurisdiction of the Court.

4. Plaintiff worked for Defendant in Hillsborough County, Florida, and this venue is therefore proper.

5. This Court has jurisdiction over Plaintiff's ADA claims pursuant to 28 U.S.C. § 1331, as they arise under 42 U.S.C. § 12101, *et seq*.

6. This Court also has supplemental jurisdiction over Plaintiff's FCRA and WCR claims, as they arise out of the same operative facts and circumstances as her ADA claims.

7. At all times relevant hereto, Plaintiff was an employee of Defendant.

8. At all times material, Plaintiff was protected during her employment with Defendant by the FCRA and ADA because Plaintiff was a disabled or "perceived as disabled" employee who suffered discrimination and harassment because of her disability or "perceived disability" by Defendant.

9. At all times material, Plaintiff was protected during her employment with Defendant by the FCRA and ADA because Plaintiff was retaliated against and

suffered adverse employment action as a result of her disability or "perceived disability," and her request for reasonable accommodation.

10. Defendant was at all times an "employer" as envisioned by the FCRA, ADA and WCR as it employed in excess of fifteen (15) employees.

## CONDITIONS PRECEDENT

11. On or around February 17, 2026, Plaintiff dual-filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") and Florida Commission on Human Relations ("FCHR") alleging disability discrimination and retaliation against Defendant.

12. On or around February 25, 2026, the EEOC issued a Notice of Right to Sue against Defendant, giving Plaintiff the right to bring a civil action on her federal claims within 90 days of her receipt of the same.

13. On or around August 31, 2026, the FCHR issued a Notice of State Rights against Defendant, giving Plaintiff the right to bring a civil action on her claims within 90 days of receipt of the same.

14. Plaintiff timely files this action within the applicable period of limitations against Defendant.

15. All conditions precedent to this action have been satisfied and/or waived.

## FACTUAL ALLEGATIONS

16. Plaintiff began working for Defendant as a Server on or about August 17, 2007.

17. Plaintiff remained employed by Defendant for approximately seventeen years, until Defendant terminated her employment on or about April 24, 2025.

18. During her tenure, Plaintiff performed her job duties satisfactorily and had no significant history of non-medical attendance, disciplinary, or performance issues.

19. On or about November 5, 2023, Plaintiff was walking through Defendant's kitchen while working when a wine steward stretched his leg backward, causing Plaintiff to trip and injure her left knee.

20. Plaintiff initially delayed filing an incident report because she understood that other employees had been retaliated against after reporting workplace injuries.

21. By on or about November 7, 2023, Plaintiff's pain had become severe enough that she filed a workers' compensation claim and sought medical treatment.

22. After Plaintiff's hospital visit, her medical provider issued crutches and placed her on work restrictions that temporarily prevented her from performing her regular Server duties.

23. During such time, the knee injury constituted a physical impairment that substantially limited Plaintiff's major life activities, including, but not limited to, walking, standing, bending, lifting, and performing ordinary daily activities.

24. As a result of her knee injury, Plaintiff experienced significant pain, instability, and limitations in the use of her knee, which affected her ability to walk and stand for extended periods of time, bending, navigate stairs, and otherwise engage in routine activities of daily living in the same manner as individuals without such impairment.

25. Following Plaintiff's injury and workers' compensation activity, Defendant's management and Human Resources Representative, Lauren Williams, began repeatedly questioning Plaintiff about when she would be fit to return to work.

26. Plaintiff informed Ms. Williams that returning to work before medical clearance could jeopardize her recovery.

27. On or about December 6, 2023, Ms. Williams informed Plaintiff that Plaintiff needed to return to a Front Desk position.

28. Ms. Williams further informed Plaintiff that if she did not accept the Front Desk position, her employment would be terminated, and her workers compensation case would be similarly cancelled.

29. Plaintiff reluctantly accepted the Front Desk position and began working in that role on or about December 9, 2023.

30. During this time, Plaintiff requested a reasonable accommodation to Ms. Williams of being permitted a five-to-ten-minute break approximately every hour since the front desk position required prolonged standing, which exacerbated her knee pains and limitations.

31. On or about December 24, 2023, Plaintiff returned to work as a Server, although she continued to experience symptoms from her knee injury.

32. Plaintiff began working in a smaller section in order to limit excessive use of her knee.

33. After Plaintiff returned to serving, Defendant's managers questioned Plaintiff frequently about her knee as Plaintiff would require moments of breaks to rest and moved at a slower pace when working.

34. With Plaintiff's ongoing knee symptoms, Plaintiff would advise management of times when her knee was in pain and needed to slow down, but despite this, Defendant would assign Plaintiff physically demanding work, such as running trays exclusively.

35. On or about January 30, 2024, Plaintiff underwent an MRI that confirmed her injury included a high-grade torn PCL.

36. Plaintiff subsequently informed Ms. Williams of the diagnosis and advised that, while awaiting further treatment, she needed to exercise caution and limit activities that could aggravate her knee injury.

37. Despite Defendant's knowledge of Plaintiff's condition and physical limitations, Defendant continued assigning Plaintiff physically demanding duties.

38. On one such occasion, the tables assigned to Plaintiff's section were being covered by another server, such that Plaintiff otherwise would have been able to conclude her shift approximately two hours early.

39. Plaintiff informed her manager, Joseph Cabra ("Mr. Cabra"), that she no longer had tables requiring service.

40. Rather than permitting Plaintiff to conclude her shift, as other servers typically would, Mr. Cabra instructed Plaintiff to spend approximately two additional hours running trays.

41. This assignment required Plaintiff to repeatedly walk back and forth while carrying trays weighting approximately forty (40) pounds, notwithstanding Defendant's knowledge of Plaintiff's knee injury and resulting physical limitations.

42. The tray-running assignment was outside Plaintiff's usual duties under the circumstances and required significantly greater walking and physical exertion, causing Plaintiff to severely aggravate and re-injure her knee.

43. Upon returning home, Plaintiff contacted Ms. Williams and reported that, as a result of the prolonged tray-running assignment, her knee pain had become so severe that she was unable to walk.

44. In light of the significant aggravation of her knee injury, Plaintiff requested an accommodation that would limit the amount of excessive walking and physical exertion required of her while she continued seeking treatment for her condition.

45. In response to Plaintiff's request, Defendant temporarily reassigned Plaintiff to a position in the Reservations Department.

46. Around July 28, 2024, after completing some physical therapy, Plaintiff returned to serving tables.

47. Upon returning, however, Plaintiff began experiencing significant anxiety and concern that her knee condition would again be aggravated if she were required to repeatedly run heavy trays or perform other physically demanding duties.

48. During one of the pre-shift meetings, Chad, Defendant's Head Chef, made commentary regarding a former employee who kept applying multiple times to return and how he wanted employees like him to be gone.

49. Given her prior experience and the severe aggravation of her knee injury caused by excessive tray running, Plaintiff became increasingly concerned about requesting further accommodations, including a limitation on the frequency with which she was required to run trays.

50. Plaintiff further feared that requesting such accommodations, or expressing that she could not continue performing her server position without

reasonable limitations on physically demanding duties, would jeopardize her employment and result in Defendant terminating or otherwise adversely affecting her employment.

51. In or about September 2024, Plaintiff suffered a panic attack for which she sought medical treatment and was prescribed medication to manager her anxiety.

52. Plaintiff disclosed her anxiety condition and prescribed medication to Ms. Williams in Human Resources, thereby placing Defendant on notice of her condition.

53. Even prior to September 2024, Plaintiff had disclosed to one of her former managers that she suffers from anxiety and post-traumatic stress disorder ("PTSD") and provided Defendant with medical documentation concerning those conditions.

54. Although Plaintiff had generally been able to manager her anxiety and minimize significant flare-ups, the injury to her knee, combined with her increasing concerns regarding her physical limitations and continued employment caused her anxiety symptoms to intensify.

55. When Plaintiff experienced a significant flare up of her anxiety and/or panic attacks, her condition substantially affected her ability to breathe, communicate, concentrate, and think clearly, and required her to temporarily rest and regulate her breathing and heart rate before her symptoms worsened.

56. In an effort to monitor and manager her symptoms and prevent further severe flare-ups, Plaintiff began wearing a heart monitor while at work.

57. On or about April 23, 2025, Plaintiff was running behind schedule for work and began increasingly concerned that she would be disciplined for arriving late, which triggered a panic attack. .

58. Plaintiff contacted Defendant's call-out line that same day and informed Defendant that she was experiencing a panic attack but was nevertheless attempting to report to work as soon as she was able. Despite the panic attack, Plaintiff arrived by the start of service that day and began performing her duties.

59. After Plaintiff arrived and began her shift, she was introducing herself to a new employee when, Defendant's Head Chef, Chad, approached Plaintiff, accused her of being drunk, and directed her to accompany him outside.

60. Chad's accusation and confrontation caused Plaintiff's already present anxiety symptoms to significantly worsen, triggering another or continued panic attack.

61. While outside, Plaintiff attempted to explain to Chad that she was experiencing a panic attack.

62. Ms. Williams also came outside and observed Plaintiff while she was experiencing symptoms.

63. During the panic attack, Plaintiff struggled to breathe, communicate, and form words sufficiently to explain what she was experiencing.

64. After Plaintiff's symptoms eventually subsided, Defendant's management instructed Plaintiff to leave work and Plaintiff drove herself home.

65. The following day, on or about April 24, 2025, Chad called Plaintiff and informed her that Defendant had terminated her employment, effective immediately.

66. It is clear that Defendant terminated Plaintiff because she suffered a disability/perceived disability, and required reasonable, non-burdensome accommodation for same, and because Plaintiff applied for worker's compensation benefits.

67. Any other reason theorized by Defendant is mere pretext.

68. Plaintiff is an individual with a disability who, with or without, reasonable accommodation, was fully capable of performing the essential functions of her job.

69. Defendant's termination of Plaintiff stemmed from its discriminatory animus toward her disability and her need for accommodation under the ADA/FCRA.

70. By reason of the foregoing, Defendant's actions, and non-actions, affected the "terms, conditions or privileges" of Plaintiff's employment as envisioned by the ADA/FCRA.

71. The timing of Plaintiff's termination makes the causal connection between her disability disclosure/request for reasonable accommodation under the ADA/FCRA, and her termination sufficiently clear.

72. The facts surrounding Plaintiff's termination also create a strong inference of disability discrimination in violation of the ADA/FCRA.

73. Defendant was aware of Plaintiff's ADA/FCRA-protected disability and need for accommodation.

74. Plaintiff was a disabled individual, or otherwise perceived as disabled by Defendant, during her employment.

75. Plaintiff suffered sufficiently severe and pervasive treatment, and ultimately termination, because of her disability and/or "perceived disability."

76. Defendant's actions are the exact type of unfair and retaliatory employment practices the ADA/FCRA, and WCR were intended to prevent.

77. Defendant did not have a good faith basis for its actions.

78. Defendant did not have a legitimate, non-retaliatory reason, for its actions.

79. Defendant retaliated against Plaintiff after she had reported a workplace injury and pursued workers' compensation benefits, in violation of the WCR.

80. As a result of Defendant's illegal conduct, Plaintiff has suffered damages, including loss of employment, wages, benefits, and other remuneration to which he is entitled.

81. Defendant lacked a subjective or objective good faith basis for its actions, and Plaintiff is therefore entitled to liquidated damages.

82. Plaintiff has retained the law firm of RICHARD CELLER LEGAL, P.A., to represent her in the litigation and has agreed to pay the firm a reasonable fee for its services.

**COUNT I: DISABILITY DISCRIMINATION UNDER THE ADA FAILURE TO ACCOMMODATE**

83. Plaintiff reincorporates and readopts all allegations contained within Paragraphs 1 through 5, 7 through 8, 10 through 70, 72 through 75, 77 through 78, and 80 through 82, above.

84. The acts of Defendant, by and through its agents and employees, violated Plaintiff's rights against disability discrimination under the ADA.

85. The discrimination to which Plaintiff was subjected was based on her disability and/or "perceived disability."

86. Defendant failed to engage in the interactive process with Plaintiff, and failed to provide reasonable accommodations for Plaintiffs' disability.

87. The conduct of Defendant and its agents and employees proximately, directly, and foreseeably injured Plaintiff, including, but not limited to, lost wages and benefits, future pecuniary losses, emotional pain and suffering, humiliation, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

88. Plaintiff has suffered damages as a result of Defendant's illegal conduct toward her.

89. The conduct of Defendant was so willful, wanton, and in reckless disregard of the statutory rights of Plaintiff, as to entitle her to an award of punitive damages against Defendant, to deter it, and others, from such conduct in the future.

90. Plaintiff is entitled to recover reasonable attorneys' fees and litigation expenses pursuant to 42 U.S.C. § 12205.

**WHEREFORE**, Plaintiff requests a judgment in her favor and against Defendant for her actual and compensatory damages, including, but not limited to, front pay, back pay, emotional distress damages, and punitive damages, as well as her costs and attorneys' fees, declaratory and injunctive relief, and such other and further relief as is deemed proper by this Court.

## COUNT II: RETALIATION UNDER THE ADA BASED ON DISABILITY

91. Plaintiff reincorporates and readopts all allegations contained within Paragraphs 1 through 5, 7, 9 through 67, 71 through 78, and 80 through 82, above.

92. Plaintiff was terminated within close temporal proximity of her request for reasonable accommodation.

93. Plaintiff's request for reasonable accommodation constituted protected activity under the ADA.

94. Plaintiff was terminated as a direct result of her request for reasonable accommodation.

95. Plaintiff's protected activity, and her termination, are causally related.

96. Defendant's stated reasons for Plaintiff's termination are a pretext.

97. The conduct of Defendant and its agents and employees proximately, directly, and foreseeably injured Plaintiff, including, but not limited to, lost wages and benefits, future pecuniary losses, emotional pain and suffering, humiliation, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

98. The conduct of Defendant was so willful and wanton, and in such reckless disregard of the statutory rights of Plaintiff, as to entitle her to an award of punitive damages against Defendant, to deter it and others from such conduct in the future.

99. Plaintiff is entitled to recover reasonable attorneys' fees and litigation expenses pursuant to 42 U.S.C. § 12205.

100. Plaintiff has no plain, adequate, or complete remedy at law for the actions of Defendant which have caused, and continue to cause, irreparable harm.

**WHEREFORE**, Plaintiff requests a judgment in her favor and against Defendant for her actual and compensatory damages, including, but not limited to, front pay, back pay, emotional distress damages, and punitive damages, as well as her costs and attorneys' fees, declaratory and injunctive relief, and such other and further relief as is deemed proper by this Court.

## COUNT III: RETALIATION IN VIOLATION OF WCRS

101. Plaintiff reincorporates and readopts all allegations contained within Paragraphs 1 through 4, 6 through 7, 10, 16 through 50, 65 through 67, and 76 through 82, above.

102. Plaintiff engaged in protected activity when she reported her workplace injury, sought medical treatment, filed or attempted to file a workers' compensation claim, and pursued benefits arising from her November 5, 2023 workplace injury.

103. Defendant terminated Plaintiff from her employment in violation of the WCRS.

104. Plaintiff was retaliated and terminated in violation of the WCRS for pursuing her legal rights to workers' compensation benefits.

105. As a result of Defendant's intentional, willful and unlawful actions, Plaintiff has suffered damages, including, but not limited to, lost wages, lost benefits,

lost employment status, as well as humiliation, pain and suffering and other monetary and non-monetary losses.

**WHEREFORE**, Plaintiff requests a judgment in her favor and against Defendant for her actual and compensatory damages, including, but not limited to, front pay, back pay, and emotional distress damages, declaratory and injunctive relief and such other relief deemed proper by this Court.

## COUNT IV: DISABILITY DISCRIMINATION UNDER THE FCRA FAILURE TO ACCOMMODATE

106. Plaintiff reincorporates and readopts all allegations contained within Paragraphs 1 through 5, 7 through 8, 10 through 70, 72 through 75, 77 through 78, and 80 through 82, above.

107. The acts of Defendant, by and through its agents and employees, violated Plaintiff's rights against disability discrimination under the FCRA, Chapter 760, Florida Statutes.

108. The discrimination to which Plaintiff was subjected was based on her disability/handicap, or "perceived disability."

109. Defendant failed to provide reasonable accommodations after Plaintiff requested same.

110. The conduct of Defendant and its agents and employees proximately, directly, and foreseeably injured Plaintiff, including, but not limited to, lost wages and benefits, future pecuniary losses, emotional pain and suffering, humiliation,

inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

111. The conduct of Defendant was so willful, wanton, and in reckless disregard of the statutory rights of Plaintiff, as to entitle her to an award of punitive damages against Defendant, to deter it, and others, from such conduct in the future.

112. Plaintiff is entitled to recover reasonable attorneys' fees and litigation expenses pursuant to section 760.11(5), Florida Statutes.

113. Plaintiff has no plain, adequate or complete remedy at law for the actions of Defendant, which have caused, and continue to cause, irreparable harm.

**WHEREFORE,** Plaintiff requests a judgment in her favor and against Defendant for her actual and compensatory damages, including, but not limited to, front pay, back pay, emotional distress damages, and punitive damages, as well as her costs and attorneys' fees, declaratory and injunctive relief, and such other and further relief as is deemed proper by this Court.

## COUNT V: RETALIATION UNDER THE FCRA FAILURE TO ACCOMMODATE

114. Plaintiff reincorporates and readopts all allegations contained within Paragraphs 1 through 5, 7, 9 through 67, 71 through 78, and 80 through 82, above.

115. Plaintiff was terminated within close temporal proximity of her objections to Defendant that she felt she was being discriminated against based on her disability, and her request for reasonable accommodation.

116. Plaintiff's objections, and request for reasonable accommodation, constituted protected activity under the FCRA.

117. Plaintiff was terminated as a direct result of her objections to what she reasonably believed to be disability discrimination, and her request for reasonable accommodation.

118. Plaintiff's protected activity, and her termination, are causally related.

119. Defendant's stated reasons for Plaintiff's termination are a pretext.

120. The conduct of Defendant and its agents and employees proximately, directly, and foreseeably injured Plaintiff, including, but not limited to, lost wages and benefits, future pecuniary losses, emotional pain and suffering, humiliation, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

121. The conduct of Defendant was so willful and wanton, and in such reckless disregard of the statutory rights of Plaintiff, as to entitle him to an award of punitive damages against Defendant, to deter it and others from such conduct in the future.

122. Plaintiff is entitled to recover her reasonable attorneys' fees and litigation expenses pursuant to Section 760.11(5), Florida Statutes.

123. Plaintiff has no plain, adequate, or complete remedy at law for the actions of Defendant which have caused, and continue to cause, irreparable harm.

**WHEREFORE,** Plaintiff requests a judgment in her favor and against Defendant for her actual and compensatory damages, including, but not limited to, front pay, back pay, emotional distress damages, and punitive damages, as well as her costs and attorneys' fees, declaratory and injunctive relief, and such other relief as is deemed proper by this Court.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated this 23rd day of September 2026.

Respectfully Submitted,

**By:** ***/s/ Tanner Borges***
Tanner M. Borges, Esq.
Florida Bar No. 1035473
RICHARD CELLER LEGAL, P.A.
7951 SW 6th St, Suite 316
Plantation, FL 33324
Telephone: (866) 344-9243
Facsimile: (954) 337-2771
E-mail: tanner@floridaovertimelawyer.com